MECHANICS SAVINGS BANK, Appellee, v. B. H. GISH, Appellant.

**BILLS AND NOTES:** Fraud—Waiver by Ratification of Original Contract. Fraud in the inception of a negotiable promissory note (twice renewed directly to the indorsee) given for the purchase of an article or thing is wholly eliminated from an action on the last renewal note when it is made to appear that, prior to the execution of said last renewal note, the maker *sold the purchased article or thing and settled and adjusted all matters between himself and the original payee.*

**CORPORATIONS:** Corporate Stock—Payment by Promissory Note— Effect. The execution to a corporation of a promissory note for the purchase price of corporate shares of stock, and the discounting of said note by the corporation, work a full payment of corporate shares to the amount of the note.

**EVIDENCE:** Parol as Affecting Writings—Instrument in Part in Form of Receipt. An instrument which is in the dual form of *part* receipt and *part* agreement is not subject to parol explanation in so far as it evidences an agreement.

**EVIDENCE:** Parol as Affecting Writings—Manner of Paying Promissory Note. Parol evidence is inadmissible to show that an ordinary promissory note to a corporation was to be paid from the *earnings* of the corporation.

**Headnote 1:** 8 C. J. p. 445; 14 C. J. p. 594. **Headnote 2:** 14 C. J. p. 439. **Headnote 3:** 22 C. J. p. 1138. **Headnote 4:** 22 C. J. p. 1092.

*Appeal from Hamilton District Court.*—G. D. THOMPSON, Judge.

MAY 12, 1925.

REHEARING DENIED SEPTEMBER 25, 1925.

ACTION to recover on a second renewal note executed by defendant to plaintiff. Defendant interposed several defenses. At the close of all the evidence, on motion of plaintiff, verdict was directed in its favor against defendant for the amount of the note. From judgment entered on the verdict, defendant appeals. Facts appear in the opinion.—*Affirmed.*

*F. J. Lund,* for appellant.

*Stipp, Perry, Bannister & Starzinger* and *Henderson & Jones,* for appellee.

ARTHUR, J.—I. Located at Peoria, Illinois, was in operation a plant engaged in the manufacture or assembling and sale of tractors. In May, 1919, a corporation was organized under

1. BILLS AND
NOTES: fraud:
waiver by rati-
fication of orig-
inal contract.

the laws of Iowa, known as the Peoria Tractor Corporation of Iowa. F. R. Dennis, who was president of the Illinois plant, was selected as president of the Iowa corporation. John H. Gibson was made treasurer. Gibson was a director in plaintiff bank. Robert E. Lloyd and C. W. Lloyd were stock sales agents. The corporation was organized to manufacture or assemble tractors. It opened an office in Des Moines. It was the avowed purpose of the corporation to establish a plant at Des Moines and take over the plant at Peoria, Illinois. The Iowa corporation bargained for an industrial site in the city of Des Moines, but purchase was never completed. Dennis and the Lloyd Bros. engaged in selling stock in the Iowa corporation, and solicited defendant to buy stock. In October, 1919, defendant subscribed for 100 shares of preferred stock, at the par value of $100 each, and signed a subscription contract for the $10,000 of stock, and signed three notes of $1,000 each, and delivered them to Lloyd Bros., to represent a cash payment of 30 per cent on the stock purchased, and signed two other notes of $3,500 each, which he delivered to Dennis, president. On October 25, 1919, plaintiff bank bought the two notes of $3,500 each which defendant had signed and delivered to Dennis, president of the corporation,

paying therefor the sum of $6,682.50. These notes drew 6 per cent interest,.and ran for 6 months, and were indorsed by the Peoria Tractor Corporation of Iowa. On May 10, 1920, Gish paid the plaintiff, as interest on his notes to April 23, 1920, the sum of $210. On September 29, 1920, defendant executed a new note directly to plaintiff bank for · $7,000, maturing October 23, 1920, to take the place of the two original $3,500 notes. At the same time, defendant paid the bank $280, being the interest to October 23, 1920, and the two $3,500 notes were canceled and returned to defendant. On December 18, 1920, defendant, by a written instrument, sold and assigned his subscription for 100 shares of the capital stock of the Peoria Tractor Corporation of Iowa, to F. R. Dennis. The consideration recited was that Gish received from Dennis two notes for $5,300 each, signed by Dennis, payable to Gish.

At a meeting of the stockholders in the latter part of 1920 or the fore part of the year 1921, it was decided to suspend operations, on account of the general economic depression then existing. Defendant retained in his possession the two Dennis notes of $5,300 each, until March 8, 1921, when he indorsed and delivered them to plaintiff as collateral security for the payment of his first renewal note of $7,000. On June 28, 1921, defendant executed and delivered to plaintiff a second renewal note for $7,000, which is the note in suit. At the same time, he executed and delivered to plaintiff a note for $388.58, in payment of the interest on the first $7,000 note, and the old note was returned to him. $500 was collected on the Dennis notes and applied in payment of the interest note which he had given, and the balance was credited on the note in suit.

This action was begun to collect the balance due on the last $7,000 note executed by defendant. The petition was in the ordinary form. The defenses pleaded in the answer were, briefly stated, fraud in the sale of stock and consequent fraud in the inception of the notes executed in purchase of the stock; want of consideration; conditional delivery of the notes, including the note in suit; payment of the obligations held by the bank; and rescission. A counterclaim was also filed, alleging fraud, as in the answer proper. After the close of the evidence, the counterclaim was withdrawn. In reply, plaintiff denied gener-

ally the defenses claimed, and pleaded ratification, waiver, and estoppel, and that it became holder in due course of the notes in question.

II. Many errors are assigned, which all center around the ultimate question presented on this appeal, which is whether the trial court should have directed a verdict in favor of plaintiff for the amount due upon the note in suit. In substance, the assignments are that the court erred in striking certain evidence offered by appellant in support of allegations of fraud in the transactions; that it was error not to submit to the jury the issues of fraud in the several defenses pleaded, and to hold, as a matter of law, that the evidence was not sufficient to sustain said defenses; and that it was error to hold, as a matter of law, that the acts of appellant constituted waiver and estoppel.

III. The answer was in the usual and ordinary form, and contained the essential allegations of an action based on fraudulent representations. Defendant admitted signing the note in suit and the former notes, but avers that there was fraud in the inception of said notes, and that they were delivered conditionally only, and without consideration. The answer alleges that appellant was induced to purchase stock in the tractor company and to execute his notes therefor by certain representations made by the officers and agents of the corporation and officers of appellee. Gish testified to representations made to him, which he claimed induced him to purchase stock in the corporation and to execute the original $3,500 notes, in substance as follows: That Dennis, president of the company, and Robert Lloyd and C. W. Lloyd, stock salesmen, stated to him, in substance, that the Peoria Tractor Corporation of Iowa owned a factory at Peoria, Illinois, which was in operation in the manufacture of tractors; that the corporation had bargained for a site at Des Moines, and that the plant at Peoria would be moved to Des Moines; that the plant at Peoria was worth $250,000, and was free from incumbrance; that the Illinois plant had been in operation for eight or ten years; that at first a small tractor was made, which from time to time was improved, until they were making a certain tractor called "Model L," on which a profit was being made of from $300 to $400 a tractor, and that three or four tractors a day were being turned out; that "Model L"

was covered by patents which were held by the Iowa corporation; that "Model L" and the patents connected with it were worth $2,000,000; that "Model L" would revolutionize the tractor industry of the country.

The Lloyd Bros. stated that Dennis was a millionaire, and did not require other people's money to run the plant, but wanted to get the farmers interested and to buy stock to assist in selling the product of the factory; that they wanted the farmers to buy stock and put up notes to run until the plant was located at Des Moines; that, after the plant at Des Moines was in operation, the earnings would yield enough to the farmers who bought stock and gave their notes for it to retire their notes; that such purchasers of stock would only need to pay interest on their notes until the plant got in operation, and then the earnings would pay the notes.

Dennis stated that the Illinois plant was in a sound financial condition; that it had assets to the amount of $250,000, and was paying an annual dividend of 8 per cent; that the Illinois plant was owned by the Peoria Tractor Corporation of Iowa; that, at the suggestion of Dennis, he went to Des Moines and saw MacKinnon, then president of appellee bank; that MacKinnon told him that Dennis was a millionaire, was financially all right, and that what he said could be relied upon, and that the corporation was going to have one of the greatest manufacturing plants in the middle west located in Des Moines; that he saw John H. Gibson, who afterwards became treasurer of the Iowa corporation, and who was then a director in appellee bank; that, in conversation, Gibson told him of various industries which were coming to Des Moines, and especially about the Peoria Tractor Corporation of Iowa, and mentioned the financial standing of F. R. Dennis. He said Dennis was a millionaire; that Dennis and the Peoria Tractor Company were financially good. He pointed out the good features of the "Model L" tractor, and said it was one of the best tractors on the market; that the plant was supposed to be moved to Des Moines in the spring of 1920. With reference to the notes that would be given for stock, Gish testified that Gibson said, "as to the notes for stock, in regard to the payment of these notes, he said these notes would not have to be paid; that they would retire

themselves. You had to keep any interest paid until the factory got in operation, then from there on, the notes would take care of themselves, after the plant got in operation;'' that Dennis stated that, in the event the plant was not built in Des Moines, Gish would not have to pay the notes,—they would be canceled. Witness testified that Dennis and the stock salesmen stated that, if he, Gish, purchased stock, they would take his notes therefor; that about 70 per cent of the notes would be placed in the bank for safe-keeping, and only the interest on said notes was to be paid, up to the time the plant got in operation, and then the notes were to be paid out of the earnings of the plant, as the plant would earn the money, and in this way the notes would be retired. The balance of the purchase price of the stock, 30 per cent, was to be paid in cash; or if notes were given, the notes were to be cashed. Gish testified that he believed and relied upon the representations made by Dennis and the stock salesmen, in purchasing the stock and executing his notes therefor; and that in said purchase he also relied upon the representations made to him by officers of appellee bank, concerning the financial condition of the Tractor Corporation and of Dennis. Appellant offered testimony to prove the falsity of such representations.

Of the persons who made the representations testified to by appellant, Dennis, at least, was possessed of guilty knowledge of their falsity. The bank had no stock in the corporation, and the evidence does not disclose that anyone connected with the bank, except Gibson, who was a director, and held a small amount of stock,—enough so that he could qualify as treasurer,— had any interest therein. Dennis made to the officers of the bank substantially the same representations that he made to appellant regarding the assets of the corporation and what it would accomplish. Like appellant, they believed, so they testified, the statements made by Dennis concerning the enterprise, and repeated to appellant the story that Dennis had told them. *Scienter* as to statements made to appellant by officers of the bank has no support in the evidence. Evidently they were deceived, as well as appellant, as to the assets of the Illinois plant, and concerning the claimed wealth of Dennis.

But it was not necessary to hold, in directing verdict, that the evidence, as a matter of law, showed that the bank was a

purchaser of the notes in due course. The defense of fraud failed, as a matter of law, and was entirely eliminated from the case by the acts of appellant himself in selling and transferring his stock and making settlement of the transactions involving the fraud, as will presently appear.

In the fall of 1919, appellant had purchased stock of the corporation in the amount of $10,000, and had executed five notes aggregating that amount, in payment for the stock. Three of the notes, for $1,000 each, had been delivered to Lloyd Bros., salesmen, as the cash payment on the stock, which notes were sold by Lloyd Bros., and the money turned in to the Tractor Corporation. The two other notes for $3,500 each were sold to appellee bank, the Tractor Corporation receiving the money from such sale. Thus appellant received credit with the Tractor Corporation for a fully paid-up subscription for the stock he had purchased. In September, 1920, appellant paid the interest on his two notes held by the bank, and executed one note in the amount of $7,000, to take the place of said two notes.

In chronological order, the next important occurrence was on December 18, 1920, when appellant sold all his interest in the corporation to Dennis. It appears from the testimony of Gish that Dennis had told him that, if he became dissatisfied with his investment, he would buy his stock. In the fall of 1920, Gish asked Dennis for a financial statement; but it was not furnished. Gish had observed, according to his testimony, that the corporation had not made the progress promised, had not moved the Illinois plant to Iowa, and had not built a plant in Des Moines; and that very little stock was being sold. Gish testified:

"By the 1st of December, 1920, I had concluded that they would never move the plant to Des Moines, and I wanted to get rid of the investment."

Gish wrote to Dennis that he wanted to dispose of his stock. Negotiations between Gish and Dennis resulted in the sale by Gish to Dennis of his stock. The sale and settlement, known in the record as "Exhibit 6," was in writing, as follows:

"December 18, 1920.

"This will acknowledge receipt of two notes of even date in the sum of $5,300 each, due in six and eight months, respectively, with interest from date at the rate of 6% per annum, of

F. R. Dennis, also check for $15 and $2.12 cash for revenue stamps to be affixed by me, in full payment for my subscription for 100 shares of capital stock of the Peoria Tractor Corporation of Iowa, and I hereby *assign* said subscription to F. R. Dennis for the consideration above mentioned. This is in full settlement of all matters between myself and the Peoria Tractor Corporation of Iowa and F. R. Dennis, from now on.

"[Signed] B. H. Gish."

Appellant testified that the amount of the two Dennis notes, $10,600, represented the amount of the notes he had given in purchase of the $10,000 of stock, with interest.

The transaction evidenced by the above-quoted instrument was had in Des Moines. Gish took the Dennis notes with him, and kept them in his possession until March 8, 1921, when he indorsed them, guaranteeing payment, and delivered them to appellee bank as collateral security for the payment of his $7,000 note then held by the bank, and received from the bank receipt for said notes, reading as follows:

"Des Moines, Iowa, March 8, 1921.

"Received of B. H. Gish one note, signed F. R. Dennis, for $5,300 to B. H. Gish, 6%, due eight months from date. One note signed F. R. Dennis for $5,300 to B. H. Gish, at 6%, due six months from date. Held as collateral to note for $7,000 signed by B. H. Gish, dated July 23, 1920. Our No. 37367.

"Mechanics Savings Bank.

"Geo. L. Rowe, Vice President."

Appellant testified that, before the execution of Exhibit 6, Dennis said that he would give him his notes in purchase of the stock, and that the Mechanics Savings Bank would take the notes; and that, before accepting the notes, he talked with Mr. Rowe, vice president of the bank, in regard to it, and Rowe said that Dennis was all right, and that he "thought he could handle the notes;" and that afterwards, when he took the notes to the bank, Rowe told him that he would collect the notes. Gish testified that, when he signed the note in suit, Rowe said he would collect the Dennis notes; that, if Dennis had a little time, he would pay them; that they could collect the Dennis notes,

which would virtually pay his note; that, if the bank collected the Dennis notes, it would refund the balance to him; that, if Dennis paid the full amount of his notes, he, Gish, was to have the difference between the Dennis notes and the $7,000 note then held by the bank. Witness further testified, referring to the first $7,000 note executed by him, "My note being past due, and they wanted me to deliver these Dennis notes, and I delivered them in payment of my note;" that the arrangement he made with Rowe, before settling with Dennis, was that the $7,000 note then held by the bank was given as a "mere matter of form," and that the bank would collect what was due it on the Dennis notes.

Gish testified that, in the fall of 1921, he visited Peoria, Illinois, to ascertain the financial condition of the tractor plant there and of Dennis, and found that a mortgage had been foreclosed on the plant, and that there were judgments against Dennis and the Tractor Company; that he came directly to Des Moines, and went to appellee, and demanded the note in suit, and told Rowe that the Tractor Corporation of Iowa was "nothing but a fake,—nothing but a blue-sky proposition, the whole transaction;" that Mr. Rowe then told him that he could not return his note to him. As we understand the record, this demand for return of the note in suit in the fall of 1921 is the basis of the claimed rescission. The note in suit was executed and delivered to appellee on June 28, 1921, about six months after appellant had sold his stock to Dennis. Appellant's claim that the several notes executed by him were given as "mere matter of form," and that, when he delivered to the bank the two notes which he received from Dennis, it was in payment of his $7,000 note then held by the bank, is disputed by Rowe, who conducted the business for the bank, and is contradicted by the receipt given by the bank for the Dennis notes.

This receipt and other documentary evidence and oral testimony show conclusively that the Dennis notes were received by the bank only as collateral security for the payment of the $7,000 note then held by the bank. More than four months later, appellant executed the note in suit, which he surely would not have done if he had already paid his former note. Some eight months after appellant placed the Dennis notes with the

bank, appellant caused a letter to be written, which was received by the bank, as follows:

"December 2, 1921.

"Mechanics Savings Bank,

"Des Moines, Iowa.

"Gentlemen: I wish to inquire for Mr. Gish as to whether or not the two notes given by F. R. Dennis to B. H. Gish for something like $5,300 each, and held by you as collateral, have ever been paid and if any part of them have been paid, will you kindly let me know or write to Mr. Gish, if you like.

"[Signed] F. J. Lund."

IV. On motion of appellee, evidence offered tending to show fraud in connection with the sale of stock and execution of the notes was stricken. The grounds of the motion, in substance, were that it affirmatively appeared that appellant sold and assigned his stock and made settlement of all claims against the corporation and Dennis, and afterwards executed the note in suit; that it affirmatively appeared from the evidence that appellant had not rescinded his contract of purchase of stock, but, on the contrary, had affirmed the transaction by disposing of his stock and making settlement of all claims against the Tractor Corporation and Dennis, thereby putting it out of his power to rescind. We find no error in the ruling.

V. The motion for directed verdict in substance was: That the evidence conclusively established, as a matter of law, that appellant entered into the contract for purchase of the stock; that, as part payment for said purchase, he signed and delivered to said corporation two notes for $3,500 each; that said corporation sold, indorsed, and delivered said notes to appellee for the consideration of $6,682.50; that appellant received credit for the amount of said notes with the corporation, and has ever since retained the benefit thereof; that, by the execution of said notes and the purchase of same by appellee, and receiving credit for the amount of said notes with said corporation, there accrued to appellant the advantage of a fully paid-up subscription for his stock; that appellant sold his stock, interest, and rights in said corporation, and made a complete settlement and release of all his claims and rights; that, by virtue of said sale

and settlement, appellant received two promissory notes from
Dennis, each in the sum of $5,300; that appellant kept said
notes in his possession until March, 1921, when he indorsed and
delivered them to appellee, as collateral security for the payment
of his indebtedness to appellee; that thereafter he executed the
note in suit; that he had never rescinded his purchase of stock
or any of the transactions connected therewith; that he never
disaffirmed any of the transactions, but at all times affirmed said
transactions and retained the benefits thereof; that appellant
waived any fraud in connection with his purchase of stock, and
ratified and confirmed his obligations to appellee; that the de-
fense of fraud in connection with the purchase of said stock
is not available in this suit, for the reason that the evidence
shows, as a matter of law, that no rescission was made or at-
tempted, but, on the contrary, the evidence affirmatively estab-
lished, without dispute, that appellant affirmed the transaction
by disposing of his interest in the corporation and releasing all
claims in connection therewith; that the evidence conclusively
established, as a matter of law, that appellant elected to and did
confirm and ratify the said stock purchase; that the evidence
fails to establish any conditional delivery of the notes; that the
evidence fails, as a matter of law, to support the claim that
the Dennis notes were delivered to appellee in payment and
settlement of the note in suit or any prior note; that it affirma-
tively appears from the evidence, as a matter of law, that the
said Dennis notes were indorsed, transferred, and delivered to
plaintiff as collateral security, and that the note in suit was
executed several months after the said Dennis notes were de-
livered to appellee as collateral security; that the evidence is
not sufficient, as a matter of law, to go to the jury on the issue
as to whether appellant transferred and delivered said notes
to appellee in payment and settlement of his indebtedness to
appellee; that, under the evidence, as a matter of law, appellant
waived any fraud in the premises, and ratified and confirmed his
indebtedness to appellee.

VI. It is the settled rule in this class of cases that, when
fraud in the inception of the contract is relied upon as a com-
plete defense, the party claiming to have been defrauded is
confined to one of two remedies,—rescission or damages. *Secur-*

*ity Sav. Bank v. Sturtz,* 196 Iowa 1128; *Exchange State Bank v. Buckley,* 198 Iowa 437. In the case before us, as we understand the record, appellant predicated his claimed rescission upon the transaction evidenced by the written instrument Exhibit 6. The trial court, in directing verdict, correctly held that said instrument evidenced, as a matter of law, the sale by appellant of his stock, and settlement of all his claims against the corporation and Dennis, and constituted, as a matter of law, together with other evidence, an affirmance of the original contract. In argument, counsel for appellant practically conceded that rescission was not effected or attempted, and urged, in excuse of nonrescission, that the stock was worthless, and that there was nothing to rescind, and, therefore, no necessity for rescission.

Appellant secured right to corporate stock by virtue of his subscription contract and the notes which he executed pursuant thereto, and thereby became a stockholder in the corporation, even though no certificates were issued to him.

2. CORPORATIONS: corporate stock: payment by promissory note: effect.

The issuance of certificates was immaterial, except as evidence of his ownership of shares in the company. *Waukon & Mississippi R. Co. v. Dwyer,* 49 Iowa 121; *Jackson v. Traer,* 64 Iowa 469; *Hawley v. Upton,* 102 U. S. 314 (26 L. Ed. 179). Even though the stock itself was of no value, appellant secured the advantage of paid-up stock subscription, thereby discharging his statutory liability as a stockholder to creditors of the corporation, which was of substantial value. Code of 1897, Section 1631 (Code of 1924, Section 8394); *Security Sav. Bank v. Sturtz,* supra. Furthermore, appellant received a cash credit of $500 on his indebtedness incurred in purchase of the stock. Appellant also recognized value in the stock by resale of the same.

The contention that the instrument Exhibit 6 was merely a receipt, and subject to explanation, under the record, is untenable. The instrument showed on its face that it was not merely a receipt. By its terms it evidenced an

3. EVIDENCE: parol as affecting writings: instrument in part in form of receipt.

absolute sale and assignment by appellant of his stock in the corporation. This disposes of the claims of conditional delivery and also payment of the note in suit. If the notes were delivered conditionally in

the first instance, as claimed by appellant, he waived same by selling and assigning his stock. The claim of payment, as a matter of law, must fail. Defendant cannot consistently or truthfully claim that the giving of the note in suit was a "mere matter of form," or that the transaction by which he received the two Dennis notes in sale of his stock constituted payment of the note. It cannot be true that he obtained from the sale of his stock notes in the amount of $10,600, and was still to have surrendered to him the $7,000 note which the bank held, and which represented part of the original purchase price of the stock.

With the issue of fraud out of the case, by which appellant claimed, among other things, that he was induced to deliver the notes in question upon condition that the Illinois plant would be moved to Des Moines, and a plant constructed in Des Moines, there remained only the claim that the notes were to be paid from the earnings of the corporation. Evidence offered to sustain such claim was incompetent, was clearly in violation of the parol-evidence rule, and was properly stricken. *Klemm v. Weil,* 194 Iowa 1073, and cases there cited; *Smith v. Breeding,* 196 Iowa 670. In the *Klemm* case we said:

4. EVIDENCE: parol as affecting writings: manner of paying promissory note.

"It was an oral contemporaneous promise, and was as contradictory to the written undertaking of the note as it was possible to make it."

In the *Smith* case we said:

"Appellant's claim is simply an attempt to change, vary, and contradict the terms of the written instrument by proof of a contemporaneous parol agreement."

Giving to the evidence the probative effect which by any reasonable interpretation may be accorded it, we think the trial court did not err in holding that the evidence, as a matter of law, was insufficient to sustain any of the defenses interposed. Directing verdict for appellee, under the record before us, was not error.

Results in affirmance of the case.—*Affirmed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.