V. E. ROGERS, Appellant, v. BLANCHE JUNGKUNZ, Administratrix, Appellee.

SALES: Rescission—Inability to Return Property. The purchaser of corporate bank stock cannot rescind when he has pledged the stock and is unable to tender it back to the seller.

Headnote 1: 35 Cyc. p. 146.

*Appeal from Butler District Court.*—M. H. KEPLER, Judge.

DECEMBER 13, 1927.

Consolidation of claim filed by V. E. Rogers against the estate of J. F. Jungkunz, deceased, with an action by the administratrix of the J. F. Jungkunz estate against V. E. Rogers on two promissory notes for $600 and $100, respectively, executed by Rogers. The case set up by Rogers for allowance of his claim and his defense to the action on the notes are the same: viz., Rogers alleges that he purchased of Jungkunz 20 shares of stock of the Citizens State Bank of Bristow, for $250 per share, to apply on which the notes sued for were given; that, as a part of the consideration for his purchase, Jungkunz agreed to appoint him assistant cashier of the bank on July 1, 1925, at a salary of $125 per month; that Jungkunz had a contract with Newberry and Richards, majority stockholders, for the purchase

of controlling interest in the bank; that Jungkunz has since died, and his administratrix has surrendered control of the bank by canceling the Richards and Newberry contract, and thereby disabled herself from performing Jungkunz's contract with the claimant; that claimant has tendered a return of the stock, and is entitled to a return of the notes sued on, and of the money paid upon his purchase. Judgment for administratrix. Rogers appeals.—*Affirmed.*

*Sullivan & Sullivan,* for appellant.

*C. G. Burling* and *Sager & Sweet,* for appellee.

MORLING, J.—Decedent, J. F. Jungkunz, had a contract with Newberry and Richards for the purchase of 130 shares of stock of the Citizens State Bank of Bristow. This purchase seems to have been made by Jungkunz to acquire a controlling interest in and the managerial positions and control of the bank. It is to be inferred from the evidence that Jungkunz sold and delivered 20 shares of the stock to Rogers. There is no evidence as to the terms of the contract for the sale of this stock by Jungkunz to Rogers, or how the contract was carried out, further than that which, in substance, follows: Claimant's witness, Infelt, a stockholder, testifies to a conversation between himself, Jungkunz, and Rogers:

"Jungkunz said he brought Vern [claimant Rogers] along here to talk over with you buying this stock and making him assistant cashier. And I told him I was agreeable to that, so far as I was concerned. Well, Joe [Jungkunz] says, 'It is agreeable to me,' he says, 'and I am sure it will be with the rest of the boys.' He says, 'I will use my influence and do all I can to get him the job.' Rogers replied that he was willing to come and take the position. * * * I think he mentioned that night that he didn't have that much cash to buy the stock right down, but he would have to borrow the money. * * * I know there was a clause in the contract that Newberry had a position there as long as Newberry had an interest in the bank. The longer they talked, I began to wonder how they could get that job on the 1st of July, if he didn't place all of that stock. I kind of mentioned it on my own initiative that he would have an investment, if he didn't get the job. Then Vern would say, 'I know it is

an investment, but I am looking for the job.' Then Vern [Joe] would say, 'I think we can get the job. I am willing, and I think the rest of the boys are.' "

This witness wrote:

"There was no cut and dried agreement, definitely stated, that he would get the position in July as a consideration for buying stock; but, as I wrote Vern, Joe made it as strong as he could, consistent with the circumstances and his contract. Joe felt so certain that he could line up everything by July that he felt safe in accepting Vern as a stockholder. * * * Joe never told Vern anything about how his contract stood, and I didn't feel like offering any suggestion, as I didn't want to spoil any plans that he was working out."

In another letter, the witness wrote:

"I don't know exactly what Joe had in mind in getting Vern Rogers to buy stock. He did say one time that he was reducing his holdings so he could take a big block next time he took some over. * * * My conclusion was that, by July 1st meeting [annual], he wanted to be in a position to practically clean up the balance of the stock, and vote Vern in as assistant. At any rate, making Vern assistant would be one of the considerations. My conclusions may be far-fetched, when Joe had a contract specifically providing for an assistant cashier as long as Newberry and Richards held any stock. * * * They * * * repeated the conversation they had already had, in which Vern said he was investing with the sole object of bettering himself, and that he would have to borrow a little, to carry 20 shares. They asked me how I would vote, and I told them I was willing to vote for Vern, and Joe said he felt sure all the rest of his friends would be favorable to Vern. Joe always added this exception: that, in case he couldn't secure the place for Vern, that he would still have an investment. * * * I think, from the way Vern felt and talked, that he thought it was only a matter of voting favorable, and Joe never told him any different."

There is further testimony, but none that comes any nearer to establishing a contract of employment or of the inducement to purchase. Rogers borrowed of the Citizens State Bank of Bristow $4,000 for the purchase of the stock. The money was paid to Jungkunz, and the stock pledged to the bank as security. The stock is still held by the pledgee. Rogers, in pleading,

claims to have made rescission and tendered back the stock; but there is no evidence that he has rescinded, or that he has returned or can return the stock. The administratrix applied to the court for authority to cancel the contract with Newberry for the purchase of the stock to the extent of 120 shares, under an agreement by which she was to pay $3,000 and the estate was to be released. Authority was granted, and Rogers claims that the majority control was thereby surrendered by the administratrix, and she disabled from performing decedent's contract to elect claimant as cashier. It appears that, during all the time in question, claimant has been employed in another bank.

Without going further into details, it is manifest that the claimant's purchase of the stock was in the expectation that Jungkunz, with his associates, would control the bank, and that the directors, through their influence, would appoint claimant assistant cashier. This was to be corporate action. The employment and the terms thereof would depend upon such action. Jungkunz died shortly after the purchase was made. The expectations of all concerned were thereby disappointed. No contract for claimant's appointment was ever consummated. Whether the disappointment in mutual purpose would be ground for rescission, we do not discuss. Claimant received and pledged the stock, and has not returned it. There has been no rescission. Claimant neither pleads nor proves any case for damages. Further discussion would be profitless.—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.