378 P.2d 906

Webber MACKEY and Marjorie Mackey, his wife, Appellants,

v.

PHILZONA PETROLEUM COMPANY, a corporation, and John G. Phillips, Appellees.

No. 6764.

Supreme Court of Arizona.

En Banc.

Feb. 21, 1963.

Moore & Romley, Phoenix, for appellants.

Snell & Wilmer, Phoenix, for appellees.

STRUCKMEYER, Justice.

The facts stated most favorably to plaintiffs in the court below show that Webber Mackey and his wife owned a retail petroleum business consisting essentially of nine retail service stations in Arizona. In June of 1956 the defendant John G. Phillips initiated discussions with Mackey which in general concerned Phillips buying into the business. At one time the parties agreed to a partnership arrangement but that arrangement was never consummated being abandoned by the decision of the parties to organize a corporation. Accordingly the defendant Philzona Petroleum Company was formed.

On August 3rd, 1956, it, as buyer, and the plaintiffs, as sellers, entered into a contract, hereinafter called the agreement, whereby plaintiffs' interests in the retail petroleum business were transferred to the corporation. In return plaintiffs received a small amount of cash and the corporation assumed the plaintiffs' outstanding obligations totaling in excess of $125,000. Plaintiffs were also to receive a large block of the unissued stock of the corporation. Philzona assumed control of the Mackey properties with Phillips as president and Mackey as manager but certain difficulties not here material developed with the result that on October 2nd, 1956, Phillips caused the corporation to discharge Mackey.

Some six months later plaintiffs brought an action alleging that the agreement was procured by fraud. In their prayer for relief they asked: 1. That the agreement be reformed in certain particulars, 2. That as reformed it be rescinded and that title to plaintiffs' property be quieted, that there be an accounting and an adjustment of equities between the parties and 3. In the alternative, if 1. and 2. were impossible, that plaintiffs have judgment by reason of fraud against defendants in an amount equal to the reasonable value of the property transferred to Philzona.

At the trial the court permitted defendants to interrupt plaintiffs' presentation of their case to establish from an examination of plaintiff Mackey that he had assigned 750 shares of the stock he was to receive under the agreement to Cato Oil and Grease Company on October 6th, 1956, and 500 shares to one Boyd Houston on October 9th, 1956, with the right to repurchase, and 600 shares to Seiberling Rubber Company on January 25th, 1957, for a total value of stock either sold or assigned of $18,500.

In our former opinion, 90 Ariz. 272, 367 P.2d 632, we said that the trial

**90**

court should not have permitted the defendants to interrupt the presentation of the plaintiffs' case, in order to establish a defense to the action. However, in the decision we did not discuss the effect of Rule 39(b), Rules of Civil Procedure, 16 A.R.S., on this procedural aspect of the case. Rule 39(b) provides that in a trial by jury the plaintiff shall introduce evidence and then the defendant shall introduce evidence but that this order of proof is subject to change by the court for good cause. We have previously held that under Rule 39(b) the order of proof is within the sound discretion of the trial court. Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758.

Upon reconsideration of the facts and our decision in Podol v. Jacobs, supra, we do not find an abuse by the trial court of its sound discretion. Plaintiff Mackey was on the stand testifying in proof of his case when a colloquy occurred between the court and counsel. Plaintiffs' counsel announced that he would like to present an argument on the right to rescind and reform, either then or later. Defendants' counsel then asked leave of the court to examine plaintiff with respect to certain matters in order to establish the legal picture,—as he stated " * * * we may as well raise the issue because it's one that your honor will face, and is decisive of the lawsuit." To this plaintiff objected and the court ruled that "we'll settle the matter now". A continuing objection was then interposed by plaintiff urging that such

was cross-examination and not properly voir dire.

Defendants then questioned plaintiff with respect to the assignment and the sale of stock he was to receive under the contract and elicited the facts as stated. The trial then proceeded but subsequently, defendants moved that plaintiffs be required to "elect" whether they were presenting evidence on the question of reformation and rescission or on the question of damages. The court deferred an immediate ruling on the defendants' motion but when a controversy arose as to whether certain evidence was admissible ruled that in its opinion the plaintiff had "waived" the right to rescind the contract but that it "would continue to receive evidence on the theory of fraud in their action for damages for fraud" or on any other claim they had, but not evidence "that went *only* to the matter of rescission". (Emphasis supplied) And later the court indicated "The evidence pertains only to the right to rescind, I will have to sustain the objection to that until you get around these assignments of the shares of stock, which I feel is a waiver of the right to rescind."

To this position the court repeatedly adhered finally stating: " * * * the court is still of the opinion that the plaintiff has *ratified* the contract by his actions in making these assignments of his shares of stock." (Emphasis supplied) Plaintiff then indicated to the court that primarily the complaint was one for reformation and

rescission and that his hands were effectively tied by the ruling of the court and that "we might as well stop there". The court then directed a verdict in favor of defendants.

It should be at this point emphasized that plaintiffs' prayer was for reformation and rescission and in aid of the rescission the quieting of title, an accounting and an adjustment of equities. Hence, if legally the agreement could not be rescinded, evidence relating to reformation, the accounting and an adjustment of equities was not relevant to the inquiry.

It is clear from the foregoing that the court below did not require an election from plaintiff. The court first directed the order of proof, then being convinced of the fact of ratification indicated it would either receive evidence which would tend to negative such ratification or evidence proving fraud sufficient to support the prayer for damages or evidence which would support any other claim presented by the pleading.

The vital question to the determination of this appeal then is whether the court below erred in its ruling. This, of course, is to be determined by the law applicable to rescission of contracts. The accepted principle is that the power of avoidance for fraud or misrepresentation is lost if the injured party after having acquired knowledge, actual or constructive, of the fraud, manifests to the other party an intention to affirm or exercises domination of things, restoration of which is a condition of his power of avoidance. Restatement of Law, Law of Contracts, § 484.

As pointed out the agreement of sale between Mackey and Philzona was executed on August 3rd, 1956, and thereafter Mackey served as general manager until October 2nd, when he was dismissed. The assignments of stocks were all made subsequently, the first two within a few days after dismissal and the third approximately three and one-half months later. Each of the assignments contained recitations to the effect that the stock had not been issued and authodized Philzona to deliver the certificates to the respective assignees. The fact that defendant Philzona had not issued the stock certificates to the assignees does not operate as an estoppel. An assignment unaccompanied by delivery vests equitable title in stock in the transferee, A.R.S. § 10–240. And see Johnson v. Johnson, 300 Mass. 24, 13 N.E.2d 788. No action by Philzona could operate to defeat the rights of the assignees as equitable owners of the stock and hence the plaintiffs as assignors have exercised dominion thereof, restoration of which must be a condition to avoidance of the transaction. The cases are in accord that the assignment of stocks under similar circumstances to this case is an unequivocal act which amounts to a ratification. Mechanics' Sav. Bank v. Gish, 200 Iowa 463,

**92**

203 N.W. 687; Glatzer v. Ax, Sup., 63 N.Y. S.2d 551. And see Rogers v. Jungkunz, 204 Iowa 1119, 216 N.W. 705.

 Plaintiffs in an effort to escape the effects of these assignments offered evidence and avowals that at the time they were not aware of their right to a rescission. We are unable to perceive how this can aid plaintiffs' case. The effect of the assignments to plaintiffs' creditors was an affirmation of the transaction. That plaintiffs were ignorant of the legal consequences of their act is immaterial. Ignorance will not prevent conduct from amounting to an election of a right. Williston on Contracts, Revised Ed., Section 698.

In our former decision we relied on the case of Garrett v. Reid-Cashion Land & Cattle Co., 34 Ariz. 245, 270 P. 1044 stating:

"If the litigants here had been strangers dealing at arms length the plaintiff would be barred from rescission. But the rules governing the fiduciary relationship between partners apply to the parties." 90 Ariz. at 277, 367 P.2d at 635.

In Garrett a fiduciary relationship was found to exist by reason of the fact that majority shareholders of the Garrett Sheep Company were also majority shareholders of other corporations later merged into the Reid-Cashion Land & Cattle Company. We held that by reason of the interlocking directorate of the two companies the majority stockholders became trustees and occupied a fiduciary relationship to the minority stockholders. The facts in Garrett are not comparable to those here and that case is not authority for the proposition that a fiduciary relationship exists under the circumstances of this case.

While plaintiff asserts that because the initial understanding between Mackey and Phillips was to establish a partnership and a fiduciary relationship exists between partners, no partnership agreement in fact was ever formally entered into. The ultimate agreement as made was between the corporation and Mackey and wife. At the time of the agreement between Mackey and the corporation there was no fiduciary relationship between Phillips and Mackey. They were in contemplation of the law strangers dealing at arms length. Nor was there such a relationship between the corporation and Mackey, except that Mackey, of course, owed the corporation a fiduciary duty, he then being one of its directors.

The evidence is uncontradicted that plaintiff Mackey knew all the facts surrounding the transaction upon which he claims the right to rescind at the time of his discharge as general manager of the corporation. Pomeroy states the rule as being well settled that a simple mistake by a party as to a legal result of an act which he performs is no ground for relief. Pomeroy; Equity Jurisprudence, 5th Ed., Section 843.

Plaintiffs rely on the California case of Chung v. Johnston, 128 Cal.App.2d 157, 274 P.2d 922, advancing the argument that equity will give relief against conduct which is merely thoughtless or inadvertent. If that case reflects the rule in California, we reject it here for business transactions where men of sound minds deal at arms length. Accordingly, we hold that the plaintiffs by the continued acceptance of the benefits of the bargain acknowledged the facts which would deny a rescission, and ratified the contract, and must abide thereby.

In light of the foregoing, our original opinion in this matter, 90 Ariz. 272, 367 P.2d 632, is vacated. The judgment of the lower court will be affirmed and it is so ordered.

Judgment Affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and LOCKWOOD, J., concur

McGUIRE, Judge (dissenting).

I dissent. I would reverse the case and remand for a new trial. It was not intended in the original opinion, 90 Ariz. 272, 367 P.2d 632, to modify the rule as to the discretion of the trial court in permitting the introduction of evidence out of order as laid down in a number of cases of which Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758

is the latest, nor limit the application of Rule 39(b).

There is a difference between merely receiving evidence out of order and sustaining objections to further evidence offered by the party against whom the out-of-order evidence was introduced.

Further discussion of this matter would not be of value in this case for the plaintiffs herein did in answer to a question of the trial court decline to proceed on the theory of damages on fraud and stated in their reply brief in the Supreme Court that this appeal hinges on the question of whether the plaintiffs' conduct after October 2, 1956 resulted in a waiver of their substantive right to rescind the agreement. I therefore proceed to this question.

It is fundamental that in passing on a motion for directed verdict all the evidence must be taken in the light most favorable to the party against whom the motion is made; and in this case since the court stopped the further introduction of evidence in support of the cause of action for rescission that such evidence when introduced would in fact support the complaint.

Plaintiffs seek to escape upon various grounds the well-known and fundamental rule that any domination (such as a sale or assignment) exercised by a defrauded party (with knowledge of the facts) over the property received in the fraudulent

deal amounts to a ratification and bars rescission.

Defendants did refuse or at least failed to issue the stock to the assignees or to plaintiffs for assignees and plaintiffs maintain that this action in and of itself prevents defendants relying upon the assignments. Defendants maintain and plaintiffs deny that the contract by which defendants were required to issue the stock is a valid and binding contract. If treating that contract as valid and binding circumstances exist which justified defendants in refusing to issue the stock, then such refusal is of no consequence; the action of defendants in doing only what they had a right to do would not prevent them from relying upon a defense otherwise sound.

On the other hand defendants cannot insist the court treat the contract as valid and non-rescindable if they themselves are not living up to it. If therefore it appears that the conduct of the defendants in refusing to issue the stock cannot be justified and was wrongful they cannot rely on the assignments unless they were prejudiced thereby.

The main problem in this case however arises upon the question of what knowledge and intent Mackey must have had at the time of the making of the assignments in order for them to bar equitable relief as a matter of positive law and beyond the discretion of the court to grant.

Pomeroy states the rule as being well settled that a simple mistake by a party as to a legal result of an act which he performs is no ground for relief. Pomeroy, Equity Jurisprudence, 5th Ed., Section 843. No man can escape the consequences which the law attaches to his acts merely by asserting that at all times he entertained a secret, subjective intent that the act was not to have that effect, nor ordinarily by saying that he had no idea it would have the effect and would not have performed it had he known. But in this case Mackey claims he was ignorant of his then existing right to rescind and not merely of the effect of the assignments.

This Court in Garrett v. Reid-Cashion Land and Cattle Co., 34 Ariz. 245, 270 P. 1044 granted relief from actions taken under a mistake of law.

On page 273 of 34 Ariz. on page 1053 of 270 P. the Court said:

"The rule that permits relief to one who enters into a transaction ignorant of his antecedent existing legal rights is well recognized. It is stated by Pomeroy on Equity Jurisprudence (3d Ed.) § 849, as follows:

" 'Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relations either of property or contract, or personal status, and enters

into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.'

"This rule is especially applicable to all cases involving the relation of a trustee to his *cestui que trust*."

In a later edition of Pomeroy it is said:

"Firmly settled as are the foregoing general rules, it is equally well settled that there are particular instances in which equity will grant defensive or affirmative relief from mistakes of law pure and simple, as well as from those accompanied by other inequitable incidents." Pomeroy, Equity Jurisprudence, 5th Ed., Section 844.

The majority opinion holds definitely that a fiduciary relationship did not exist between the parties to this litigation and hence did not apply the rule of the Garrett case.

A fiduciary relationship exists where one party imposes confidence in another and is defined in Black's Law Dictionary, 3rd Ed., page 775, as follows:

"A relation subsisting between two persons in regard to a business, contract, or piece of property, or in regard to the general business or estate of one of them, of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith. Out of such a relation, the law raises the rule that neither party may exert influence or pressure upon the other, take selfish advantage of his trust, or deal with the subject-matter of the trust in such a way as to benefit himself or prejudice the other except in the exercise of the utmost good faith and with the full knowledge and consent of that other, business shrewdness, hard bargaining, and astuteness to take advantage of the forgetfulness or negligence of another being totally prohibited as between persons standing in such a relation to each other."

Such a relationship exists as a matter of law between partners but it does not exist merely because the parties are stockholders in a small corporation. It has been held that the relation of promoters to each other is analogous to that of a partnership with its attendant trust relationship. 13 Am. Jur., Corporations, Sections 126–130, 18 C.J. S. Corporations, §§ 138–143. For a case in which this Court held such a relationship to exist between two men who each owned 50% of the stock of a corporation see

Funk v. Spalding, 74 Ariz. 219, 246 P.2d 184.

In the case at bar two men, one of whom owned a business in need of financial support and the other had money to invest, formed a corporation in which they were the only natural persons interested to take over the business; one was to manage the financial end, the other the actual running of the business.

I think that many circumstances point to the conclusion that in fact a fiduciary relationship did exist between these men, and even if it is not taken as established, it at least was a mixed question of fact and law to be solved after all the evidence on the complaint had been presented.

Defendants have in fact never issued, nor parted with the stock, and the assignments will not prejudice them in the least degree provided they are protected against any claims of the assignees. There are strong indications in the record that the plaintiffs were in financial difficulties at the time of the making of the assignments and would not otherwise have made them, and it is logical to conclude that some of this difficulty was brought about by reason of the discharge of the plaintiff after he had conveyed his business to the corporation.

Hence, under all of the circumstances I would reverse and remand for a new trial.