463 P.2d 78

Frank I. JERGER and Bertha Jerger, his wife, Appellants,

v.

Morris J. RUBIN and Sari J. Rubin, his wife, Appellees.

Ed THIRKHILL, Ed Thirkhill Realty, Cross-Appellant,

v.

Frank I. JERGER and Bertha Jerger, his wife, Cross-Appellees.

No. 1 CA–CIV 970.

Court of Appeals of Arizona, Division 1.

Department B.

Dec. 30, 1969.

Rehearing Denied Feb. 5, 1970.

Review Granted March 17, 1970.

Sullivan & Mahoney, by William P. Mahoney, Jr., Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson, Phoenix, for appellees.

Milliken & Mitchell, by James T. Milliken, Scottsdale, and Lewis, Roca, Beauchamp & Linton, by James Moeller, Phoenix, for cross-appellant.

JACOBSON, Judge.

This case involves a rescission of a land transaction based upon fraud or misrepresentation.

On June 1, 1964, appellants-defendants, Frank I. Jerger and Bertha Jerger, his wife, sold a five-acre parcel of land located on North Scottsdale Road, Scottsdale, Arizona, to plaintiffs-appellees, Morris J. Rubin and Sari J. Rubin, his wife. The sale was negotiated by cross-appellant-defendant, Ed Thirkhill Realty, through its salesman, R. L. Stamper. Stamper was a defendant at the trial but is not a party to this appeal.

The plaintiffs were first contacted in February of 1964, by defendant Stamper who advised them that he had an unusually attractive real estate deal consisting of a five-acre commercial parcel. What made this deal particularly attractive, according to plaintiffs' version, was that Stamper told them that Shell Oil Company had agreed to purchase a corner portion of this property for $75,000.00; that the entire purchase price for all five acres was only $125,000.00, and that the Shell Oil deal could be closed right after plaintiffs acquired the property. When plaintiffs inquired as to the reason why the seller wished to part with this property under such favorable conditions, again according to plaintiffs, Stamper advised them that the seller would have adverse tax consequences if he accepted the Shell Oil offer and that he had to sell the parcel as a five-acre unit. Following these alleged representations, plaintiffs purchased the property. The evidence is uncontradicted that the seller defendants did not authorize any other defendant to make any representations at all concerning the property and that the seller defendants merely listed the property with the defendant broker only as to description, selling price and sale terms.

The purchase contract, which took the form of a trust agreement, required a down payment of $36,250 and the balance in four annual payments with the first annual principal and interest payment due on or before June 2, 1965.

After the closing of the transaction, plaintiffs inquired of defendant Stamper on several occasions as to the progress being made on the purchase by Shell Oil Company and were informed by Stamper that he felt he could obtain $85,000 from Shell Oil or an additional $10,000 over and above the alleged original deal. These inquiries by plaintiff continued from shortly after the closing date until late January or early February of 1965, at which time plaintiffs advised Stamper to accept the original $75,000 purchase price from Shell Oil. At this time, Stamper advised plaintiffs that Shell Oil had decided against the

purchase due to a sign ordinance adopted by the City of Scottsdale, but that he had contacted a Ray A. Brashear who was willing to purchase the service station site for $65,000.00.

Pursuant to this representation, plaintiffs authorized Stamper to set up an escrow for the sale of the service station site to Brashear, which was done on March 4, 1965. In April, 1965, Stamper again contacted the plaintiffs and advised that because of domestic problems, Mr. Brashear would be unable to purchase the site. Stamper then advised that he had an additional purchaser for the service station property (the Rothschilds) who would purchase the site for the same price.

Pursuant to this last representation, the plaintiffs and the Rothschilds both signed escrow instructions agreeing to the sale and purchase of the service station site for the sum of $65,000 contingent upon a lease being secured with American Oil Company, which Stamper represented would be forthcoming.

While the Rothschild escrow was pending, plaintiffs contacted defendant sellers on May 15, 1965, asking for an extension of time to make the initial annual payment due on June 2, 1965. Pursuant to this contact, defendant sellers agreed to forego the principal payment due on that date, provided that the interest payment due on June 2, 1965, was paid.

On May 16, 1965, plaintiffs contacted another real estate agent and from that contact requested defendant Stamper to show them his files concerning the original Shell Oil Company deal, which Stamper was unable to do.

Mr. Brashear testified at the trial that he was interested in purchasing the service station site provided an oil company lease was executed but that escrow instructions had never been tendered to him. Also representatives of American Oil Company and Shell Oil Company testified that their respective companies had no files that would reflect any dealing on the particular parcel of ground in question.

Plaintiffs failed to make the interest payment due on June 2, 1965, and on June 25, 1965, defendant sellers caused notice of forfeiture to issue against plaintiffs. On July 13, 1965, plaintiffs, through their attorneys, offered to rescind the transaction because of the alleged fraud of defendant Stamper. This offer was rejected, the property was forfeited back to defendant sellers and this suit for rescission by the plaintiffs followed.

The trial court found for the plaintiffs, based upon the alleged misrepresentation concerning the Shell Oil Company deal, and granted rescission to plaintiffs. Since the forfeiture of plaintiffs' interest had already occurred, the trial court granted judgment against defendant sellers for the down payment price, granted judgment for the defendant sellers against the defendant Thirkhill for the amount of commission paid and for defendant sellers and against defendant Stamper for the balance of the down payment. Further defendant Thirkhill was granted judgment against defendant Stamper for the amount of commission paid him.

The trial court further indicated in his remarks following trial that the value of the property in question was commensurate with the price paid by plaintiffs and that the representations made by Stamper were probably innocently made.

Defendant sellers appeal from the judgment granting rescission and the money judgment against them, and defendant Thirkhill appeals from that portion of the judgment entered in favor of defendant sellers against it.

Both defendants contend that the statements by Stamper concerning the transaction with Shell Oil Company were not actionable as being in the realm of "puffing", opinion or of a futurity. There appears, on the face of the evidence, to be some merit to the last contention.

Since plaintiff Morris Rubin was unavailable at the time of trial an affidavit as to what his testimony would be was admitted by defendants in lieu of a continuance

of the trial to secure his presence. This affidavit, together with plaintiff's deposition which was admitted in evidence, contains the only evidence concerning a representation as to the actual present intention of Shell Oil to purchase the corner site.

The plaintiff's affidavit, which does not differ materially from the deposition in this regard, stated:

"Stamper again advised him that Shell Oil Company had agreed to purchase the corner for $75,000.00 and that this deal could be closed right after he acquired the property from Jerger."

■ It is the general rule that a misrepresentation, to be actionable must be as to a present fact and not as to a future possibility. Waddell v. White, 56 Ariz. 420, 108 P.2d 565 (1940), rehearing denied 56 Ariz. 525, 109 P.2d 843 (1941).

However, there is a respectable line of authority which holds that the representation of a third person's state of mind at a given moment is as much a present fact as the existence of any other thing and therefore one who makes a fraudulent misrepresentation to another that a third person intends to do or not to do a particular thing for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable for the harm caused by the other's justifiable reliance. Cofield v. Griffin, 238 N.C. 377, 78 S.E.2d 131, 40 A.L.R.2d 966 (1953); Eade v. Reich, 120 Cal.App. 32, 7 P.2d 1043 (1932); Donnell v. Stein, 331 Mo. 418, 53 S.W.2d 903 (1932); Restatement of Torts Sec. 525, comment b and c (1938). While the cases cited here deal with fraudulent misrepresentations in actions for damages, we are of the opinion that this same principle is applicable to innocent misrepresentations in actions for rescission. See Horne v. Timbanard, 6 Ariz.App. 518, 434 P.2d 520 (1967).

In such a case, however, the representation must be as to the present intention of the third party, and not merely what some third party might intend to do or not to do in the future. Fox v. Duffy, 95 App.Div.

202, 88 N.Y.S. 401 (1904); Annot., 40 A.L.R.2d 971 (1955).

■ The statement by plaintiff that Shell Oil Company "had agreed to purchase" the property denotes some finality as to the intention of Shell Oil and therefore could be classified as a statement of fact—i. e., present intention. However, the subsequent actions of the plaintiffs in allowing Stamper to further negotiate with Shell Oil for an additional $10,000 on the represented purchase price would lend credence to Stamper's testimony that he only told plaintiff that Shell Oil Company was interested in the property. Moreover, since plaintiff's own testimony indicates that these negotiations continued until January or February of 1965, the length of time involved from the June 1, 1964, closing date belies the "back to back" representation supposedly relied upon by plaintiffs. However, the Arizona Supreme Court has on numerous occasions cited the familiar doctrine that where a trial court sits without a jury and makes no findings of fact and conclusions of law, all evidence must be viewed in a light most favorable to the prevailing party and that the judgment of the trial court will be affirmed if there is any reasonable evidence to support it. Balon v. Hotel & Restaurant Supplies, Inc., 103 Ariz. 474, 445 P.2d 833 (1968). In this case, if the matter had been tried before a jury, there was sufficient evidence before the trial court to submit to that jury the question of whether or not the representation of Stamper was as to a present or future intention of Shell Oil Company. Therefore, the finding by the trial court, implicit in its holding for the plaintiffs, that the representation was of a present intention, is binding on this court.

Assuming then, that there was a misrepresentation made by Stamper which would justify the plaintiffs rescinding this contract, the question still remains as to whether the plaintiffs by their conduct affirmed the contract of sale between the parties, after knowledge of the misrepresentation.

The rule of law applicable is stated in Mackey v. Philzona Petroleum Company, 93 Ariz. 87, 378 P.2d 906 (1963) as follows:

"The accepted principle is that the power of avoidance for fraud or misrepresentation is lost if the injured party after having acquired knowledge, actual or constructive, of the fraud, manifests to the other party an intention to affirm or exercises domination of things, restoration of which is a condition of his power of avoidance."

It is noted that, while the *Philzona* case speaks of only knowledge of fraud, since the first portion of the quoted sentence deals specifically with fraud and misrepresentation, we feel knowledge of any misrepresentation is also intended.

It is also noted that Restatement of Contracts Sec. 484 (1932), cited by the Philzona case as authority for the principle quoted above, makes no mention of "constructive" knowledge on the part of the injured party but merely refers to "acquiring knowledge of the fraud or misrepresentation. * * *" It is, therefore, apparent that the Arizona Supreme Court has broadened the rule laid down in Restatement to make the prerequisite knowledge on the part of the injured party not only actual knowledge, but also to include "constructive knowledge" of the fraud or misrepresentation. Thus, notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. Maricopa Utilities v. Cline, 60 Ariz. 209, 134 P.2d 156 (1943).

As the above recitation of facts indicate, plaintiffs did exercise dominion over the subject property (entering into two separate escrows) and manifested an intent to affirm the contract (requesting an extension of time for payments). The point of inquiry then is directed to a determination of whether or not plaintiffs possessed knowledge, either actual or constructive, of the misrepresentations by defendant Stamper at the time this dominion was exercised.

While there is no question that plaintiffs knew in January or February, 1965, that Shell Oil was not going to purchase the corner site, and therefore Stamper's representation in this regard was false, plaintiffs contend that they did not know the extent of the misrepresentation or the fraud of Stamper until May 16, 1965, after which time the plaintiffs exercised no control over the property and offered to rescind the transaction. Plaintiffs at this point confuse fraudulent misrepresentation with innocent misrepresentations. There is no doubt, when the evidence is viewed in the light most favorable to plaintiffs, that plaintiffs had no actual knowledge of Stamper's activity or nonactivity in regard to the property in question. But they did have actual knowledge long before May 16, 1965 that the representation upon which they relied, i. e., the purchase by Shell Oil Company, was in fact a misrepresentation although, as far as they were concerned at the time they authorized the Brashear deal, innocently made. This, as against the sellers, would be grounds for rescission. Lehnhardt v. City of Phoenix, 105 Ariz. 142, 460 P.2d 637 (1969); Horne v. Timbarnard, supra; Restatement of Contracts Sec. 476 (1932).

Having in January or February, 1965, the right to rescind, the plaintiffs authorized Stamper, now their agent, to open an escrow to sell the property to Brashear for $65,000, being $10,000 less than the represented sale price to Shell Oil Company. Thus, if Brashear had completed the transaction, restoration of the property to the defendant sellers, which would be a condition of voidance, would have been an impossibility. The fact that Brashear did not go through with the transaction or that plaintiffs were unaware that these facts gave them the legal right to rescind, is immaterial. Mackey v. Philzona Petroleum Company, supra.

Moreover, after the Brashear transaction failed to materialize, plaintiffs

again authorized, and this time signed, escrow instructions to sell the service station site to Rothschild. The Rothschild transaction was expressly contingent upon a lease being executed with American Oil Company. At this point in time, the plaintiffs had been through two abortive attempts to sell this property with Mr. Stamper acting as their agent. In our opinion the exercise of ordinary care would require plaintiffs to ascertain whether or not the contingencies under which they hope to sell their property that is, a lease with American Oil Company, had some basis in fact. If they had exercised that ordinary care, it is apparent that the true facts concerning the status of negotiations with American Oil Company would have been made available to them. Under such a situation we hold that the plaintiffs had, in addition to the actual knowledge of the falsity of the Shell Oil Company representation, constructive knowledge of the extent of Stamper's later representations.

The original escrow instructions with Rothschild bear the date of April 16, 1965. Approximately one month later, on May 15, 1965, having constructive knowledge of the misrepresentations of Stamper, the plaintiffs asked for and received an extension of time on the principal payment due on the property on June 2, 1965. By this act, the plaintiffs continued to affirm the original sale and having the requisite constructive knowledge of the misrepresentations of Stamper at the time cannot now seek an avoidance of that sale.

In our opinion, the actions of the plaintiffs, after acquiring knowledge both actual and constructive, of the misrepresentations of Stamper, manifested an intention to affirm the contract and were an exercise of dominion over the property, by which the power of avoidance for misrepresentation was lost. Mackey v. Philzona Petroleum Company, supra.

Since our decision in this matter requires a reversal of the judgment granted to plaintiffs and a dismissal of their complaint, we need not discuss the merits of cross-appellant Thirkhill's contentions.

Judgment reversed with directions to dismiss plaintiff's complaint.

EUBANK, P. J., and HAIRE, J., concur.