[No. 12029. Department One. December 28, 1914.]

JOHN KONRAD BECKER, *Appellant*, v. ROBERT WM. CLARK et al., *Respondents*.[1]

VENDOR AND PURCHASER — RESCISSION BY VENDEE — FRAUDULENT REPRESENTATIONS—EVIDENCE—SUFFICIENCY. A sale of land may be rescinded by the vendee for fraud, where the land was 1,700 miles away and had never been seen by the vendee, and there was clear and convincing evidence that the representations of the vendor's agent which induced the sale were to the effect that the land was in the heart of a German Catholic settlement, and were made knowing that to be a material fact in the mind of the vendee, who was of that faith and bought in order to have a home in such a community, when, in fact, the whole country was an unsettled wilderness; and it is immaterial that the vendee did not intend to go there for a year or two.

SAME. In such a case, the breach of promissory representations that a church would be built there the following year is immaterial except as it threw light on the other representations, and so does not remit the purchaser to an action for damages.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered April 10, 1914, dismissing an action for rescission, after a trial on the merits to the court. Reversed.

*V. T. Tustin*, for appellant.

*John M. Gleeson*, for respondents.

GOSE, J.—This is an action in equity to rescind a contract for the purchase of a section of land near Babine Lake, in the province of British Columbia, and to recover a judgment for $1,600, the amount paid upon the contract, with legal interest from the date of its payment. There was a judgment dismissing the action. The plaintiff appealed.

The appellant, a German farmer of the Catholic faith, sixty-seven years of age, residing at Colton in Whitman county, this state, in the month of April, 1913, entered into

[1]Reported in 145 Pac. 65.

a contract with the respondent Clark and the respondent corporation, for the purchase of the land in question. The contract price was $6,400. Sixteen hundred dollars was paid when the contract was signed. The negotiations were all carried on and the money was paid at Colton. The land is seventeen hundred miles distant from Colton. The appellant had never seen the land, and had no information of either its quality or desirability except such as he acquired from one Hopkins, the selling agent of the respondents. This fact was known to Hopkins. The appellant and two of his witnesses, Ernest Becker and John Reisenauer, farmers living in the vicinity of Colton, the former a brother of the appellant, testified that Hopkins represented that the land was the center of a German Catholic settlement, and that a Catholic church would be erected on the adjoining section during the summer of 1913. The appellant testified that it was upon these representations he contracted, and that without them he would not have contracted at all. He further said that it was his purpose to take two or three German families with him and move upon the land within a year or two and make it his home. There were no settlers other than Indians within five miles of the land. The whole country was a forest primeval. There were two Indian Catholic churches, each about twelve miles from the land, and Indian villages at these points.

The agent, Hopkins, testified in respect to his representations about the German Catholic settlement, as follows:

"Q. Then about the Catholic settlement, you knew that Mr. Becker was interested in having a Catholic settlement there in case he bought? A. He told me that he would be. Q. You knew at that time that the prime reason for his buying there was that there was a Catholic settlement there and he would move into it and there would be a church built the coming year? A. No, sir. Q. Didn't he tell you that? A. He didn't tell me that would be his main object because he had no authority to tell me that would be. Q. He had no authority? A. No, because I hadn't told him there was a Catholic settlement. . . . I told him if he bought there, which he

might do, that we could probably interest a great many other Germans there who were Catholics and would sell to them and they could all live there together if they wanted to."

In respect to the building of the church he testified:

"The facts are I did not tell him there would be a church built there on section 13 or any place else right in there, not naming any particular point. Q. Did you name any particular time? A. No, no particular time, but that if he bought there, *he being a Catholic*, that other Catholics would probably buy there and I could see no good reason why they couldn't have a church there at any time they wanted it."

It is important to note that the respondents' agent sought the appellant at the latter's home in Colton, and induced him to make a contract for the purchase of land seventeen hundred miles distant, which the agent knew the appellant had not seen. The agent knew that the appellant was a German Catholic and that he wanted land in a German Catholic settlement. To the appellant, the presence of a German Catholic settlement around the property was a material fact, and the representation that it existed was an inducing cause for the purchase. Aside from the questions of race sentiment and religious belief, it is a well known fact that the character of the neighbors materially affects the market value of property. The trial court said that there was a preponderance of evidence to the effect that Hopkins represented that the land was in the heart of a German Catholic settlement, but that the evidence upon the point was not clear and convincing. The controlling factor with the court apparently was that, inasmuch as the appellant had no immediate intention of going upon the land, the nationality and religious belief of the neighbors was immaterial. In this we think he was in error. Whether the appellant purchased the land on speculation or for the purpose of making it his home, the character of the neighbors would materially affect the market value of the land. A purchaser of property takes into consideration its probable future value. He knows that, in event he desires to

sell it, the question of neighbors, whether good or bad, will enter into the transaction. Indeed, he knows that this element may make or defeat a sale. The appellant swore, however, that he purchased the land for a home and that the inducing cause was the representation that the neighborhood was settled by people of his nationality and religious belief.

The law in this state is that,

"The purchaser may rely upon representations of the vendor where the property is at a distance, or where for any other reason the falsity of the representations is not readily ascertainable." *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102; *Lindsay v. Davidson*, 57 Wash. 517, 107 Pac. 514; *Best v. Offield*, 59 Wash. 466, 110 Pac. 17, 30 L. R. A. (N. S.) 55; *Godfrey v. Olson*, 68 Wash. 59, 122 Pac. 1014; *Conta v. Corgiat*, 74 Wash. 28, 132 Pac. 746; *Grant v. Huschke*, 74 Wash. 257, 133 Pac. 447; *Borde v. Kingsley*, 76 Wash. 613, 136 Pac. 1172; *Chapman v. Hill*, 77 Wash. 475, 137 Pac. 1041; *Lamb v. Levy*, 77 Wash. 511, 137 Pac. 1024.

Beginning as early as *Stone v. Moody*, 41 Wash. 680, 84 Pac. 617, 5 L. R. A. (N. S.) 799, this court has steadfastly adhered to the view that a lie is not legal tender in this state. *Stelter v. Fowler*, 62 Wash. 345, 113 Pac. 1096, 114 Pac. 879.

We think the evidence is clear and convincing that the respondents' agent represented to the appellant that the land contracted for was in the heart of a German Catholic settlement, knowing that to be a material fact in the mind of the appellant, and the inducing cause of the purchase, when in fact the whole country was an unsettled wilderness. The mere fact that the appellant did not intend to go upon the land for a year or two does not militate against his right to rescind the contract. To him, the representation was material, and without the representation, he testified that he would not have considered the contract at all.

We have treated the promissory representation that a church would be built the following summer upon an adjoining

section as immaterial except as it throws light upon the other representations. As a general rule the breach of a promissory representation does not warrant a rescission, but the purchaser is remitted to an action for damages.

The judgment is reversed, with directions to enter a judgment in favor of the appellant and against the respondent Clark and the respondent corporation as prayed for in the bill.

CROW, C. J., CHADWICK, PARKER, and MORRIS, JJ., concur.