[No. 31568.   Department Two.   February 15, 1951.]

ALFRED U. GRONLUND et al., Respondents, v. ERNST G. ANDERSSON et al., Appellants.[1]

[1]Reported in 227 P. (2d) 741.

*Carl J. Smith* (*H. E. Foster,* of counsel), for appellants.

*Heideman & Flanagan* and *Glen E. Duncan,* for respondents.

ROBINSON, J.—This is an action for rescission of a contract for the purchase of certain real property, consisting of a residence and residential facilities, located on Bainbridge island, Kitsap county, Washington. The complaint alleged that the defendants, Doctor and Mrs. Andersson, had been the owners of the property in question; that they employed a realtor, one Russell Munro, as their agent, to sell it; that the realtor took the plaintiffs, Mr. and Mrs. Gronlund, to the property for the purpose of showing it to them in anticipation of their purchase of it; and that he and his agents

" . . . showed the plaintiffs a well and pump located on the property and stated to the plaintiffs that the defendants, the owners of the property, had assured the said realtor and his agents that the said well and pump would at all times produce an adequate supply of water both for normal household use and sprinkling the lawn and yard of the said property so as to keep the said lawn and yard in first class condition."

The complaint further alleged that the plaintiffs thereafter entered into an executory real-estate contract for the purchase of the property for the sum of sixteen thousand five

hundred dollars; that a portion of the money due under this contract was paid to the defendants; and

"That the plaintiffs entered into the said contract, . . . in reliance on the assurance and representations of the agent of the said defendants, Russell Munro, and his employees, that the water supplied by the said well and pump on the property would be adequate at all times for normal household use and proper sprinkling of the lawn and yard on the said property. That the said assurances and representations were made to the plaintiffs for the purpose of inducing them to purchase the said property . . . , and that the defendants knew, or should have known, at the time that the said representations and assurances were made, that they were false and the plaintiffs would reasonably rely on the said representations and assurances to their damage."

The complaint continued, alleging:

"That shortly after the plaintiffs purchased the said property and occupied it, they became aware of the fact that there was not an adequate water supply for either normal household use or proper sprinkling of the lawn and yard on the said premises, and that prior to the said time they had no reasonable way of ascertaining that the said supply of water was inadequate. That by virtue of the inadequate supply of water on the said premises and the purchase of the said property by the plaintiffs in reliance on the representations and assurances of the defendants that there was an adequate supply, the plaintiffs suffered substantial damages and that the plaintiffs would not have entered into the said contract for the purchase of the said property and made the payments thereon referred to above except for the false and fraudulent representations by the defendants that there was an adequate supply of water for normal household use and sprinkling on the said property as set forth above."

The complaint concluded with a prayer that the contract be rescinded, and that the defendants be required to return to the plaintiffs all sums advanced on the contract in return for the quitclaim deed of the plantiffs reconveying any interest they had acquired in the property.

At the outset of the trial, defendants demurred to this complaint, on the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was overruled, and the case proceeded to trial before the court. At

the conclusion thereof, judgment was rendered in favor of the plaintiffs in accordance with the prayer of their complaint. From this judgment, defendants have appealed.

■ As their first assignment of error, appellants argue that the trial court erred in overruling their demurrer. But we are not in accord. In *Bliss v. Clebanck,* 136 Wash. 32, 238 Pac. 979, like this, an action for rescission of a contract for the sale of real estate, we approved the following language taken from *Mather v. Barnes, Keighley & Greer,* 146 Fed. 1000:

" ' . . . A misrepresentation with regard to material facts, by which a purchase of property is intentionally induced, amounts to a fraud which vitiates the transaction, and entitles the purchaser to be relieved. . . . ' "

■■ As is apparent from the portions of the complaint quoted above, such a misrepresentation was alleged here. The use of the word "fraud" in the complaint was not essential. *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654; *Lou v. Bethany Lutheran Church,* 168 Wash. 595, 13 P. (2d) 20. Appellants make much of the rather odd point that this contract was for the sale of real estate and not for the sale of water, and imply that misrepresentations concerning the water supply were consequently immaterial; but adequacy of the water supply is certainly a material matter with which any buyer of real property is normally much concerned, and this court has held, on at least two occasions, that misrepresentations in this regard will, if relied on by such a buyer, amount to sufficient grounds for rescission of the contract of purchase. See *Smith v. Fletcher,* 102 Wash. 218, 173 Pac. 19, and *Sherman v. Parker,* 104 Wash. 610, 177 Pac. 665. Nor does it matter one whit that such misrepresentations are made by the vendor's agent rather than by the vendor himself. *Becker v. Clark,* 83 Wash. 37, 145 Pac. 65.

■■ The complaint having been sufficient to state a cause of action, the court did not err in admitting evidence in support thereof. There seems to be some suggestion that, since the earnest-money receipt given by the sellers to the

buyers contains the words, "There are no verbal or other agreements which modify or affect this agreement," it was a violation of the parol evidence rule to introduce evidence concerning the statements of the real-estate agent as to the sufficiency of the water supply. Even were the quoted clause contained in the contract of sale, this contention would be quite without merit; for, where the issue is whether a contract was procured by fraud, the doctrine that parol or other extrinsic evidence is inadmissible to contradict, vary, or explain the terms of a written contract is inapplicable. See Annotation, 56 A. L. R. 13. Parol evidence of false and fraudulent representations inducing one to enter into a written contract is admissible notwithstanding the contract contains an express recital that there have been no representations, or that all oral representations shall be inoperative. *Dieterich v. Rice,* 115 Wash. 365, 197 Pac. 1. But, in the present instance, the clause in question was not in the contract of sale at all, but in the earnest-money receipt, a document which, for our purposes, was no more than a contract to enter into a contract of sale within a specified time. An agreement concerning the adequacy of the water supply would not vary or modify such a contract in any sense, and in fact would have nothing whatever to do with it.

Appellants finally contend that the evidence, as admitted, was insufficient to justify the judgment. The evidence, in general, supported the allegations of the complaint. It disclosed that Mrs. Munro, who was acting as an employee of her husband's real-estate agency, showed respondents the property, and pointed out the well and pump to them, these being located in a locked garage to which Mrs. Munro did not have the key. Then, according to the testimony of respondent Mrs. Gronlund, which the court's findings of fact indicate it accepted as true, the following occurred:

"Q. And on that occasion, when you were out there with Mrs. Munro, what, if anything, was said about the water supply on this paper? A. Well, I asked her about the water supply and she said there was water—said there was a sufficient supply for household use, sprinkling and garden. Q. Do you recall whether or not she showed you a listing?

A. I asked her in the back of the car and when we got in the yard she said, 'Here is the listing in the book.' Q. Then was anything further said about the water supply? A. Well, she said, 'Certainly there must be a sufficient supply because it is written down, here.' She showed it to me right in the book."

The listing to which Mrs. Munro referred was the second of two listings which had been made up by her in accordance with the description of the property given her by Mrs. Andersson. The first of these, which was a part of the records of the realty company, contained the statement as to depth of the well and quantity of water, "51′—plenty to sprinkle"; while the second, which she showed the Gronlunds, read: "51′ drilled well—enough water to sprinkle lawn & garden."

The following day respondents returned to the property, and, in response to their further inquiries about the water, Mrs. Munro again showed them the listing in her book. Relying (as they claimed) on these representations, respondent Gronlund signed the earnest-money receipt to buy the property. A real-estate contract was subsequently prepared and signed by both Mr. and Mrs. Gronlund, and, after it had been delivered to appellants and a down payment had been made, Gronlund moved onto the property. He ran out of water the first day—though he testified he did no sprinkling or indeed made any excessive use of it whatsoever—and immediately called Munro. Munro called a plumber, who had had considerable experience in installing pumps in wells, and who determined that the well was producing an inadequate supply of water. Another well expert further examined the well; he testified at the trial that the amount of water it was producing was insufficient for normal household use, and that, in his opinion, there had been no substantial change in the water supply between the period when the house was occupied by the Anderssons and the period when it was occupied by the Gronlunds. When appellant Andersson was notified of this situation, he stated that he could not understand it, as he always had had plenty of water.

Later, Mrs. Gronlund moved onto the property with her husband. The water shortage continued. Mrs. Gronlund's testimony indicated that the water was sufficient for one bath, or to sprinkle for about ten minutes. Finally, she called Andersson and suggested that the contract of sale be rescinded, a proposition to which he was not receptive. Nor did he respond more favorably to a letter written him about the matter by Munro. In this letter, Munro informed Andersson that he had been advised by the plumber who had inspected the well that there was an insufficient supply for ordinary household use for two people; that Gronlund was continually reminding him that his agency had represented that there was an ample supply of water when the place was sold; and that Gronlund intended to see an attorney, unless he, Andersson, paid the expense of a new well. After further complications, which need not be detailed here, this action resulted.

■ That this evidence showed a misrepresentation of material facts by which a purchase of property was intentionally induced, and that it therefore disclosed a fraud which vitiated the transaction and entitled the purchasers to rescission can scarcely be questioned. The exact nature of Mrs. Andersson's statements to Mrs. Munro regarding the water supply was never made quite clear, and was a matter of some dispute. Mrs. Andersson, for example, testified that she qualified them with the remark that it was always necessary to be careful of the water. But there was ample evidence to support the trial court's finding of fact that these statements were to the effect that there was plenty of water for sprinkling and enough for the lawn and garden. Assuming that this approximates what Mrs. Andersson actually said, it is nevertheless quite possible, and even perhaps probable (though the trial court's findings suggest otherwise), that she did not consider that her statements amounted to misrepresentations. The evidence given by Mr. and Mrs. Andersson and by their daughter showed that, by practicing certain economies and by handling the available water with care, they were able to run their household, and even to use

some of the water for sprinkling. But that the water was not available in nearly sufficient quantity for normal use, even within the house itself, and that there was, in no ordinary understanding of the terms, "plenty" of it, or "enough" of it, for the lawn and garden, was clearly demonstrated, not only by the testimony of the respondents Gronlund, but also by that of the two expert witnesses called by them. Indeed, the trial court felt, and not without reason, that it was sufficiently demonstrated by the testimony of appellants themselves. The representations to Mrs. Munro that there was an adequate supply of water being false by any objective standard, they amounted to a fraud on the buyers of the property even though they may have been made in entire good faith. *Thompson v. Huston,* 17 Wn. (2d) 457, 135 P. (2d) 834.

The judgment of the trial court is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and HAMLEY, JJ., concur.

[1]Reported in 227 P. (2d) 737.