405 P.2d 573

Roy J. MILLER and "Jane Doe" Miller, husband and wife, and Tucson Title Insurance Company, an Arizona corporation, as Trustee under Trust No. 10,167, Appellants,

v.

Henry J. BOEGER and Eleanor C. Boeger, husband and wife, Appellees.*

No. 2 CA–CIV 70.

Court of Appeals of Arizona.

Sept. 14, 1965.

Rehearing Denied Oct. 14, 1965.

Review Denied Nov. 2, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8032. The matter was referred to this court pursuant to § 12–120.23 A.R.S.

Miller & Pitt, Tucson, Robert F. Miller, Tucson, of counsel, for appellants.

Johnson, Darrow, D'Antonio, Hayes & Morales, Tucson, J. Mercer Johnson, Tucson, of counsel, for appellees.

MOLLOY, Judge.

This is an appeal from a judgment granting rescission to a buyer of real estate. The complaint alleges that the real estate agent handling the transaction fraudulently misrepresented the property. ·

There are very lucid findings of fact by the trial court and· these, together with the undisputed evidence which this court deems pertinent to the appeal, are as follows:

The defendants were the owners of 132 feet of frontage upon what was scheduled to be a one-way access road to an interstate highway. They had bought the land for approximately $300.00 per front foot eight months before the transaction in question. On approximately August 8, 1960, a real estate agent by the name of Shimberg contacted the plaintiffs to attempt to interest them in the purchase of defendants' property. At the time Shimberg so contacted the plaintiffs, he had not been authorized by the defendants to seek a buyer for the property. During the· time that Shimberg was talking to the plaintiffs about the property, he made the representation that other property in the immediate area. had sold for $550.00 a front foot, that there· would be a ramp bringing traffic off the· freeway to the north of the property and that there would be a ramp taking traffic from the frontage road onto the freeway· south of the property. Shimberg represented that these ramps were according to· the plans and specifications of the Arizona. Highway Department which he had ex-· amined. Actually, none of the property in the immediate area had ever sold for as; much as $550.00 per front foot; the highest. sales price paid for any property in the· area, other than the subject property, was: the sum of $250.00 per front foot and Shim-· berg had received an agent's commission on that sale. The plans and specifications of the Arizona Highway Department did not call· for ramps to be positioned as stated by Shimberg; the plans and specifications· called for the positioning of the ramps ex-· actly opposite from that stated—there was· to be an on-ramp north·of the property and an off-ramp south of the property. The frontage road was one-way going south, and therefore the amount of traffic passing by the property would be substantially less under the true facts as opposed to the situation represented by the real estate agent.

On August 17, 1960, Shimberg contacted the defendants asking for a figure at which they would be willing to sell the property. The defendants quoted a sales price of either fifty-one or fifty-two thousand dollars. At the time this quotation was given, the defendants contemplated that they would

be paying a real estate commission out of such sales price. On August 18, a contract of sale was signed by the parties at a price of $49,500.00. Though there is no express finding on the subject, the trial court, under the evidence adduced, might have found that the misrepresentations of Shimberg above described were repeated to the buyers between the time of the oral listing and the signing of the contract. Further, the trial court might have found that when the initial offer from the buyers was presented to the defendants, they insisted on a higher rate of interest than offered, and that when this change was brought back to the buyers the misrepresentations were repeated again in order to induce the buyers to agree to the increased interest.

The form contract which was used indicated that the real estate agent had sold the property to the plaintiffs "as agent of the seller." This portion of the contract contained a receipt for the down payment of $500.00. Shimberg did not actually sign this portion of the agreement, though he did receive the down payment of $500.00. The real estate commission was paid by the sellers, the court finding that one of defendants' motives in so doing was that it was customary for the seller to pay the real estate commission. The trial court found that there was no active concealment to place beyond the reach or discovery of the plaintiffs the falsity of the representations made by Shimberg, that the plaintiffs made no independent investigation as to the truth of these representations, but rather believed same and relied thereon. The court further found that the plaintiff-husband was a well-educated person being a special agent with the F. B. I. and that he had invested in the purchase of real estate on three prior occasions.

The falsity of the representations made was not discovered by the plaintiffs until the spring of 1961. Thereafter, the misrepresentations were made known to defendants and a demand made that the contract be rescinded. There is no contention on appeal that the plaintiffs were guilty of laches in seeking rescission once the falsity of the representations was discovered.

The trial court granted rescission of the contract and granted judgment to the plaintiffs for the amounts paid on the contract.

On appeal, the defendants do not challenge the sufficiency of the evidence to support the findings of fact, but challenge the sufficiency of these facts to support the judgment rendered. Complaint is also made of the admission in evidence of the statements allegedly made by the real estate salesman over an objection of hearsay, and as to certain rulings of the court made after the trial in connection with the defendants' motion to reopen the case to offer the testimony of the real estate salesman, Shimberg.

The contention that the facts found do not support the judgment is predicated upon the holding of Light v. Chandler Improvement Co., 33 Ariz. 101, 261 P. 969, 57 A. L.R. 107 (1928), to the effect that the listing of property with a real estate broker does not vest such broker with the authority to make representations as to the quality and value of the land to be sold. In Light v. Chandler Improvement Co., there is dicta to the effect that if misrepresentations by the broker are made known to the owner and there is an offer to rescind, which is refused, the owner thereby ratifies the false representations. The dicta pertaining to ratification in Light became one of the bases for the holding of Bailey v. Kuida, 69 Ariz. 357, 213 P.2d 895 (1950). The defendants argue that this doctrine is not applicable here for the reason that the representations in this case were made prior to the time that the broker ever became the defendants' agent.

The gist of the defendants' attack can perhaps be summarized by quoting their proposition of law No. 7:

"Unauthorized, unknown, and non-ratified statements of a broker to a buyer of realty are not binding on the seller of realty if made before the salesman becomes an agent of the seller."

The foregoing must be considered in connection with the trial court's conclusion of law that Shimberg did not become the agent of the defendants until the defendants signed the preliminary sales agreement.

■ This court is not bound by the conclusions of law of the trial court. Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P.2d 370 (1962). In this case, we hold that there was a limited agency relationship initiated at the time the defendants gave to the real estate agent an oral listing on August 17, 1960, and that this relationship is sufficient to invoke the doctrine of ratification when the misrepresentations were later called to the defendants' attention.

The defendants ask this court to hold that there is a basic distinction between (1) a real estate agent who is authorized to find a buyer for property, who is not authorized to make representations about the property on behalf of the owner but, who, nevertheless, does and (2) a real estate agent who makes representations about the property on behalf of the owner, who subsequently is authorized to find a buyer for the property and then repeats the same representations to the buyer in order to induce the purchase.

If the doctrine of Light v. Chandler Improvement Co. needs limitation, the limitation above suggested does not appeal to this court. It is too tenuous and appears to be completely unrelated to the basic reasons behind the doctrine of ratification as announced in Light.

■ The reason for the rule is that if one purports to act as an agent for another, with some color of authority in this regard, and is guilty of fraudulent conduct, which results in a benefit to the purported principal, once these facts are made known to the purported principal, it is deemed unequitable that he should be permitted to retain the benefits obtained by such conduct and nevertheless repudiate the conduct itself. Here, the only offer ever made by the plaintiff-buyers was on a written form of contract which indicated that the man

with whom they had been dealing was the agent of the sellers. While the real estate agent did not himself sign this contract, both the plaintiffs and the defendants did. The difference in degree of color of authority vested in the real estate agent between this situation and that presented in the Kuida case is not considered by this court to be decisive.

In their briefs, the defendants attack the language in Light and Kuida as dicta, and suggest that the doctrine of ratification is supported by little authority in other jurisdictions. This court has not found it so. The doctrine seems to find general support in the authorities. The following gives some indication of its general acceptance:

"The general rule that a principal who accepts, or fails to restore, the benefits of an agent's unauthorized act shall be deemed to have ratified the same may be applicable so as to work a ratification regardless of the actual intent of the principal in the particular case, and is, accordingly, applicable notwithstanding his protestations or expressions of disapproval or repudiation of his agent's unauthorized act where the principal continues to retain the benefits which he obtained as a result of such act. The general rule stated is also particularly applicable to the acts of volunteer or self-appointed agents. * * *" 2 C.J.S. Agency § 49, p. 1099.

"* * * If the agent procures a contract by fraudulent or corrupt practices, although the principal has not been privy in any way to such conduct of his agent, yet by claiming the benefit of the contract, he must take it tainted as it may be with such practices." 3 Am.Jur.2d Agency § 175, p. 561.

Restatement (Second), Agency § 99 states the general rule in substantially the same terms, indicating that in order for there to be ratification, the retention by the purported principal must be "with knowledge of the facts and before he has changed his position." In this case, there is

no contention made that the defendants changed their position in any way before the offer of rescission was made.

Much of the authority and argument of the defendants on appeal is based upon the law pertaining to fraud when recovery is being sought for damages. This court believes there is a basic difference between an action in fraud for damages and an action for rescission, such as the one now before this court. The following comment from the Restatement (Second), Agency § 258, comment *b* at 561 (1958), is pertinent:

"* * * A person employed as a middleman whose function is solely to procure another who will deal with the principal *ordinarily has no power to subject the principal to tort liability by his misrepresentations.* The function of a real estate broker may be not only to procure customers but also to make representations; whether such person is an agent for the purpose of making representations or is a mere intermediary with authority only to identify the subject matter, depends upon the local customs. *Irrespective of the scope of the employment of the agent, a third person who is deceived by representations purporting to be made on account of another as preliminary to a contract is entitled to rescind the transaction.* See § 259." (Emphasis added.)

Restatement (Second), Agency § 259 (1958), referred to in the above quotation reads as follows:

"Rescission of Transaction for Misrepresentations of Agent

"(1) A transaction into which one is induced to enter by reliance upon untrue and material representations as to the subject matter, made by a servant or other agent entrusted with its preliminary or final negotiations, is subject to rescission at the election of the person deceived.

"(2) Change of position by the principal:

(a) is a defense if the agent has no power to bind the principal by the misrepresentations;

(b) is not a defense if the principal was liable for the misrepresentations."

■ Generally, the rescission of a contract may be had for innocent misrepresentation. Restatement, Contracts § 476 (1932); Schuler v. Humphrey, 198 Or. 458, 257 P.2d 865 (1953); Gronlund v. Andersson, 38 Wash.2d 60, 227 P.2d 741 (1951). We need not, however, decide whether the Light and Kuida doctrine of ratification applies to innocent misrepresentations of an agent because there has been an implied finding of actual fraud on the part of the agent by the trial court, and, indeed on appeal, the defendants do not seriously challenge that the agent, Shimberg, was guilty of actual fraud. Under these circumstances, the universality of granting relief of rescission is indicated by the following language:

"The cases are in harmony upon the point that a contract for the sale of land induced by false and fraudulent representations by an agent of the vendor or his broker, with reference to the character or condition of the land or buildings thereon, may be rescinded by the vendee if he acts promptly after ascertaining the facts relative to the deception complained of and this is true although the vendor did not authorize the making of such representations, and had no knowledge that they had been made when the contract was entered into." 57 A.L.R. 111 at 115.

■ The appellants argue that there was just as much evidence in the record that Shimberg was the agent of the buyers as he was an agent of the sellers. This may be true, but it does not preclude rescission:

"Generally, the fact that the broker or agent in a real-estate transaction is

the agent for both parties is no defense to an action by one of the parties to hold the other party responsible for misrepresentations with regard to such other party's property made to him by the broker or agent." 58 A.L.R.2d 13 at 49.

A recent case so holding is Miller v. Wood, 188 Cal.App.2d 711, 10 Cal.Rptr. 770 (2d Dist.1961).

The defendants argue that there was no "actionable fraud" because (1) the plaintiffs had no right to rely on the claimed representations, (2) there was no testimony that they did rely on the representations, (3) the statements made were "dealer's talk" or "puffing" and (4) the representations were immaterial.

Again, the foregoing is predicated upon law from fraud cases seeking damages in tort. As indicated previously, the law pertaining to rescission may be different. But even in fraud, the general trend of the law is away from holding that a negligent plaintiff may not recover. For instance, the Restatement, Torts § 540, states:

> "The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."

In Stanley Fruit Co. v. Ellery, 42 Ariz. 74, 78, 22 P.2d 672, 674 (1933), it was held that a party suing in fraud was not entitled to a verdict " * * * if by an ordinary degree of caution the party complaining could have ascertained the falsity of the representations complained of." Mayo v. Ephrom, 84 Ariz. 169, 176, 325 P.2d 814, 818 (1958), seems to back away from this to some extent when it says:

> "Where, however, a representee makes only a partial investigation and relies in part upon the representations of the adverse party, and is deceived by such representations, it is generally recognized that he has a right to rely, and may maintain action for such deceit."

There was no finding by the trial court that the plaintiffs' conduct fell below standards of ordinary caution. On appeal, this court must assume, if the evidence permits, that the facts support the judgment rendered below. In re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372 (1956). Under this state of the law, this court does not believe it has the duty to reverse the judgment of the trial court because the buyers made no independent investigation to ascertain the truth of the representations made.

As to the contention that there was no reliance upon the representations made, we find sufficient evidence in the record to support the court's express finding in this respect. It is true that the plaintiffs never specifically testified that they relied upon the representations made, but this is implicit in all testimony given by the plaintiff-husband.

As to the contention that the representations made were only opinions, which were within the permissible limits of "puffing", there is no case law to support same. The representations made were as to actual facts which were stated to have occurred—that is, that there had been actual sales in the area at certain selling prices and that plans for the new freeway had actually been formulated in a certain way.

Belatedly, in their reply brief, the defendants cite law to the effect that there can be no ratification of an act performed by one who did not, at the time of the act, profess or represent himself to be acting as an agent for the one subsequently ratifying the act or conduct. 3 Am.Jur.2d § 171, p. 551. This appears to be good law, but this court holds that it has not been raised properly in this case. There is no assignment of error nor proposition of law in the opening brief which asserts this premise to establish error. It was not raised before the trial court in any way. This court holds that it is too late to raise it on appeal for the first time in a reply brief. City of Yuma v. Evans, 85 Ariz. 229, 336 P.2d

560

135 (1959). We therefore do not evaluate the record to determine whether Shimberg purported to be making the representations complained of on behalf of the defendants.

■ Passing on to the other assignments· of error, this court holds that the misrepresentations attributed to Shimberg were not hearsay. Whether the representations were made was a point at issue, and the statements were .not offered for their truth, which is the test of whether the hearsay rule applies. Udall, Arizona Law of Evidence § 171.

There remains the question of whether the trial court abused its discretion in connection with the post trial motions after the plaintiffs had located the agent Shimberg. Defendants made a motion to reopen one month following the end of the trial, but before final judgment had been entered. The trial court considered the motion, but deferred ruling thereon until such time as findings of fact, conclusions of law and a judgment had been settled, directing the defendants to raise this same motion in a motion for new trial, as permitted by Rule 59(b) Rules of Civil Procedure, 16 A.R.S.

Both the motion to reopen and the motion for new trial on the basis of newly discovered evidence were based upon an affidavit submitted by defendants' counsel to the effect that Shimberg had been located.in Las Vegas, Nevada, that it was not possible to locate him sooner despite reasonable and diligent efforts and that Shimberg categorically denied ever having made the representations which were the subject of the plaintiffs' action. On April 3, 1963, the trial cour: ordered that the motion to reopen the case was granted specifically for the purpose of introducing the testimony of Shimberg. The order provided that such testimony must be offered, "not by deposition", but by producing Shimberg in court and by making him available to opposing counsel at least two days prior to the continued trial. By order of court on April 24, 1963, the continued trial was set for May 13 and May 14 of 1963.

There is no showing of any objection of the defendants to the order requiring the production of Shimberg in court or the requirement that he be made available two days prior to trial for examination by opposing counsel. The record discloses. that on April 4, 1963, the defendants gave notice of the taking of Shimberg's deposition for Wednesday, April 10, 1963, at Las Vegas, Nevada. The record discloses no objection being filed to this notice. Whether this deposition was ever taken does not appear in the record.

On May 14, 1963, the defendants filed a motion for continuance, which motion is. again supported by the affidavit of defendants' counsel. This affidavit states that counsel was informed by Shimberg on May 11, 1963, by telephone that the witness "had the flu and was physically unable to travel to Arizona for the purpose of testifying",. and that the witness "had important business engagements which required his presence in Las Vegas and to which he had to devote his personal attention notwithstanding that the direction would have to be carried out under undue hardship while suffering from a flu virus." The motion for continuance was resisted by opposing counsel and denied by the court.

On appeal, the contention is made that the trial court abused its discretion in requiring Shimberg's presence in Arizona. rather than accepting a deposition, and in denying the continuance.

■ The requirement by the court of a personal appearance by the witness, under the circumstances of the case, is not necessarily unreasonable or arbitrary. At this time, the trial court had already listened to both the principal adversaries testify and undoubtedly had arrived at some conclusion as to their credibility. Our Supreme Court has held that in order to· to qualify as new evidence justifying a new· trial, the evidence must be such "as would probably change the result." Sabin v. Rauch, 75 Ariz. 275, 281, 255 P.2d 206, 209· (1953). It appears to this court that the·

trial judge was satisfied that the result here would not be changed by a bare written record of Shimberg's testifying in the manner indicated by the affidavit of defendants' counsel. There was nothing set forth in this affidavit as to the expected testimony that would add anything other than a categorical denial by the witness. There was no indication that the witness would describe corroborating circumstances that in themselves would have some probative value.

Moreover, defendants did not object to this method of taking testimony or call to the court's attention that such a personal appearance would not be possible, until the time set for the trial. Previous to this, the affidavit of defendants' counsel indicates that "Shimberg agreed to testify on behalf of the defendants." Under these circumstances, this court fails to find reversible error in connection with the requirement of a personal appearance by Shimberg.

We come now to the denial of a continuance, posed by the motion of May 14. The granting of a continuance, generally, is particularly addressed to the discretion of the trial court. Daru v. Martin, 89 Ariz. 373, 363 P.2d 61 (1961). At the time of the denial of this continuance, almost six months had expired since the close of the trial to the court (November 29, 1962). The defendants had produced no affidavit from Shimberg himself as to what he would testify. The reasons for his failure to attend at the trial were unsupported by affidavit other than that a phone call had been received from him. There was no definite showing as to when Shimberg would be available for testimony. This court will not, under these circumstances, override the decision of the trial court.

For the reasons heretofore stated, the judgment of the trial court is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.